Bobby HAILEY, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–00–172–CR.

Court of Appeals of Texas, Waco.

June 20, 2001.

Kelly R. Myers, Corsicana, for appellant.

Patrick C. Batchelor, Crim. Dist. Atty., James E. Lagomarsino, Asst. Crim. Dist. Atty., Corsicana, for appellee.

Before Chief Justice DAVIS, Justice VANCE and Justice GRAY.

## OPINION

VANCE, Justice.

Bobby Hailey was indicted for the offense of driving while intoxicated ("DWI"). Based on two prior convictions for DWI, his was a third-degree felony offense. A jury convicted him and assessed punishment at the maximum of ten-years imprisonment. On appeal, Hailey complains that evidence which was admitted at trial of his blood-alcohol level should have been suppressed because it was obtained illegally. We agree. We will reverse the judgment and remand the cause for further proceedings consistent with this opinion.

About 1:00 p.m., Hailey was involved in a one-car accident in which he narrowly missed colliding with another vehicle. His car ran down a steep embankment and became stuck in mud. Hailey waited at the scene. About twenty minutes later Department of Public Safety Trooper Simmons and Deputy Sheriff Gannon arrived,

as did an ambulance. Hailey was not physically injured, and the ambulance left without treating Hailey or transporting him to the hospital. However, on the basis of Hailey's failure of a Horizontal Gaze Nystagmus test, his condition (smell of alcohol, inability to balance), and the results from the administration of a portable breath-testing device for blood-alcohol-level,[1] Trooper Simmons decided Hailey was highly intoxicated. According to standard procedure, normally Simmons would have arrested Hailey and taken him to jail; however, he decided that he would have Deputy Gannon transport Hailey to Navarro Regional Hospital for evaluation of whether Hailey had "alcohol poisoning."[2]

At the hospital, Simmons gave Hailey the statutory warnings required by section 724.015 of the Transportation Code to be administered before a blood specimen can be obtained to determine the alcohol concentration of a person suspected of driving while intoxicated. TEX.TRANSP.CODE ANN. § 724.015 (Vernon 1999). Simmons then asked Hailey to consent for a blood specimen; Hailey refused. A person has the right not to give a specimen, unless certain conditions not applicable in this case exist.[3] TEX.TRANSP.CODE ANN. §§ 724.012, 724.013 (Vernon 1999). At some point Hailey walked outside and smoked a cigarette. Simmons retrieved him and handcuffed him to a bed in a hospital room. At some time after that an unidentified hospital worker came into the room and took a blood specimen without obtaining Hailey's oral or written consent. Trooper Simmons

and Deputy Gannon testified at the suppression hearing that they did not request that the blood be drawn. There was no evidence to contradict their testimony. No one from the hospital testified at trial. There is no evidence in the record that Hailey ever requested or consented to any tests or withdrawals of fluid specimens or to the evaluation and treatment of any condition.

Three days later Hailey's blood specimen was analyzed, and the results showed him to have been highly intoxicated. The State subpoenaed the results of the blood test for use at the grand jury, which later indicted Hailey.[4] The results of the test, along with hospital records of Hailey's admission on the day of the incident, were introduced at trial.

■ ■ Hailey filed a motion to suppress the results of the blood test under article 38.23(a) of the Code of Criminal Procedure. TEX.CODE CRIM.PROC.ANN. art. 38.23(a) (Vernon Supp.2001). A hearing was held in the middle of trial, after which the motion was denied. A trial court's denial of a motion to suppress is reviewed for abuse of discretion. *Oles v. State,* 993 S.W.2d 103, 106 (Tex.Crim.App.1999). The trial court's findings of fact are given "almost total deference," and in the absence of explicit findings, the appellate court assumes the trial court made implicit findings which were supported in the record. *Carmouche v. State,* 10 S.W.3d 323, 327–28 (Tex.Crim.App.2000); *Guzman v. State,* 955 S.W.2d 85, 89–90 (Tex.Crim.

1. The results of this test were not offered at trial.

2. Gannon testified at the suppression hearing that he would not have taken Hailey to the hospital if Simmons had not told him to.

3. Refusal results in an automatic suspension of the person's drivers license.

4. "[I]n the case of blood test results obtained by subpoena," society's interest in "safeguarding the privacy of medical records" is "not sufficiently strong to require protection of blood-alcohol test results from tests taken by hospital personnel solely for medical purposes after a traffic accident." *State v. Hardy,* 963 S.W.2d 516, 527 (Tex.Crim.App.1997).

App.1997). The application of any relevant law, including Fourth Amendment search and seizure law, is reviewed *de novo. Id.*

■ Article 38.23(a) reads:

No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

The article applies not only to agents of the State, *i.e.,* employees of the State performing their job-related duties, or persons performing tasks at the request of a State employee, but also to private citizens. *See State v. Johnson,* 939 S.W.2d 586, 587–88 (Tex.Crim.App.1996). Furthermore, if Hailey's blood was taken in violation of any state or federal law or constitutional provision, not only the blood but also the results of the blood test should have been suppressed. *Id.* at 588; *Johnson v. State,* 871 S.W.2d 744, 750 (Tex.Crim.App.1994); *Bell v. State,* 724 S.W.2d 780, 787 (Tex.Crim.App.1986).

■ Even though the hospital worker was not acting at the request of law enforcement, for the evidence to be admissible under article 38.23(a) the blood specimen must have been legally taken by the hospital worker.[5] There is no evidence in the record that Hailey ever gave oral or written consent to a blood specimen. Nor is there any evidence Hailey ever requested or consented to evaluation or treatment of any physical or mental condition. Hailey refused to sign the outpatient form acknowledging receipt of patient instructions.[6] Finally, the record does not show Hailey was in a condition which might justify emergency action by hospital personnel requiring the taking of a blood specimen without consent. HEALTH AND SAFETY CODE ANN. § 773.008 (consent for emergency medical care is not required if a person is unable to communicate, unconscious, or suffering from a life-threatening condition); *compare* HEALTH AND SAFETY CODE ANN. ch. 313, Consent to Medical Treatment Act. The argument that Hailey was suspected by hospital staff of having "alcohol poisoning" is belied by the fact that the blood was not tested until three days later.[7] Further-

5. If the blood specimen had been taken at the request of either law enforcement officer, it would have been obtained in violation of the Transportation Code, and should be suppressed under article 38.23(a). "Except as provided by Section 724.012(b), a specimen may not be taken if a person refuses to submit to the taking of a specimen designated by a peace officer." TEX.TRANSP.CODE ANN. § 724.013 (Vernon 1999). Section 724.012(b) requires that a peace officer have a specimen taken if (1) the officer has arrested a driver for DWI, (2) the driver's automobile was involved in an accident caused by the driver being intoxicated, (3) at the time of the arrest, the officer reasonably believes a person has died or will die as a result of the accident, and (4) the driver refuses to voluntarily allow the specimen to be taken. There is no evidence in the record to support the requirement that there was a life-threatening injury.

*See also Badgett v. Texas,* 42 S.W.3d 136, 2001 WL 356451 (Tex.Crim.App. April 11, 2001) (The requirement that the driver caused the accident is not met simply by showing the driver was intoxicated.)

6. It is axiomatic that if there was consent to or a request for treatment, any complaint by Hailey that blood was taken illegally would be negated.

7. The dissent interprets the entries on the lab report to mean that the blood was tested at 3:24 P.M. on March 21, 1999, the day Hailey was arrested, and that the results were then called in to the emergency room. However, the report gives a "RUN DATE" of "03/24/99," and a "RUN TIME" of "0100," indicating that the blood was tested on March 24. Also, it cannot be determined from the report that calling in the results to the emer-

more, Hailey was in enough control of his faculties to walk outside for a cigarette, and he was coherent enough to refuse Simmons's request for a blood specimen and to answer questions asked by hospital personnel, the answers to which were transcribed on documents admitted into evidence at trial. Although those documents said Hailey had "acute alcohol intoxication," they also showed that when he arrived he was "alert," in no pain, and without physical injury. He was "making complete sense when asked about medical history." About two hours after he arrived, he was "able to walk without assistance" with "improving clearing consciousness." Under both the civil and criminal law of Texas, taking the blood specimen without Hailey's permission was an assault, and therefore illegal. TEX.PEN.CODE ANN. § 22.01 (Vernon 2001); *Wal–Mart Stores, Inc. v. Odem*, 929 S.W.2d 513, 522 (Tex.App.—San Antonio 1996, writ denied) (the elements for a civil assault are the same as for a criminal assault). Therefore, under article 38.23(a), the court should have suppressed the results of the blood test.

■■■ Having found the trial court abused its discretion in failing to suppress the illegally-obtained evidence, we next determine if there was harm. The illegal taking of a blood specimen by the State can be a violation of the Fourth Amendment right against unreasonable searches and seizures. *Weaver v. State*, 721 S.W.2d 495, 497 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd); *Ferguson v. City of Charleston*, 532 U.S. 67, 121 S.Ct. 1281, 1287–88, 149 L.Ed.2d 205 (2001) (citing *Skinner v. Railway Labor Executives' Assn.*, 489 U.S. 602, 617–18, 109 S.Ct. 1402, 1412–13, 103 L.Ed.2d 639 (1989)). However, because the hospital worker who took the blood specimen was acting as a private citizen, constitutional error is not implicated. The Fourth Amendment does not apply to the acts of private citizens. *Weaver*, 721 S.W.2d at 498. Therefore, we review for whether the error affected Hailey's substantial rights. TEX.R.APP.P. 44.2(b); *Vega v. State*, 32 S.W.3d 897, 905 (Tex. App.—Corpus Christi 2000, no pet.).[8]

■■■ "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App.1997). We will not reverse if, "after examining the record as a whole, [we have] fair assurance that the error did not influence the jury, or had but a slight effect." *Johnson v. State*, 967 S.W.2d 410, 417 (Tex.Crim.App.1998). Based on the facts we have recited, we cannot say that the record as a whole assures us that the blood test results did not influence the jury and that Hailey would have been convicted without the results.

gency room was not simply protocol after blood-testing has been conducted pursuant to a request by someone in the emergency room. Furthermore, the entry in the report says "CALLED TO ER AND GAVE TO SLOAN." The attending physicians mentioned in the medical records submitted at trial are Dr. Soltes and Dr. Jaffe. We do not know who "Sloan" is, *e.g.*, he or she could be a records custodian at the emergency room.

8. If the blood specimen had been taken at the request of the State, the error would have been constitutional. Constitutional errors will be reversed unless we determine beyond a reasonable doubt that the error did not contribute to the conviction or punishment. TEX R.APP.P. 44.2(a); *Kalisz v. State*, 32 S.W.3d 718, 723 (Tex.App.—Houston [14th Dist.] 2000, no pet.). "[T]he reviewing court should focus not on the weight of the other evidence of guilt, but rather on whether the error at issue might possibly have prejudiced the jurors' decision-making ...." *Kalisz*, 32 S.W.3d at 723 (citing *Harris v. State*, 790 S.W.2d 568, 587–88 (Tex.Crim.App.1989)).

Hailey's issue is sustained. The judgment is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Justice GRAY dissenting.

GRAY, Justice, dissenting.

Why are we reversing this case on a theory never argued by any party at any time?

I do not know.

The only issue ever argued to the trial court regarding the suppression of the blood test results was that the blood was obtained in violation of the constitutional prohibition of unreasonable searches and seizures. The majority rightfully acknowledges that because the blood was taken without the intervention of a state actor, the constitutional prohibition is not violated but then moves on to decide a question not presented to us of whether Hailey was assaulted by the manner in which the blood was obtained by the hospital. The majority then disregards the trial court's determination of the facts, looks to the evidence and makes their own credibility evaluation, and then determines that the hospital committed a criminal and civil assault on Hailey.

The party bringing the motion to suppress bears the burden of establishing all of the elements of a Fourth Amendment claim. *State v. Mercado*, 972 S.W.2d 75, 78 (Tex.Crim.App.1998). Once a defendant has established the basis for a Fourth Amendment claim, the burden shifts to the prosecution to establish the validity of the search under the applicable theory of law. *Id.* The prosecution met its burden. Must the State now prove that the entity from which it obtains evidence by subpoena obtained it lawfully to withstand a motion to suppress? Hailey only challenged the way the State obtained the blood test. The

evidence established there was no State action. The blood test was obtained by a subpoena issued for the hospital records. He never argued he was assaulted by the hospital. Hailey repeatedly asserts in his brief that he did not consent to having the hospital draw blood. But, he does not direct this Court to any evidence in the record which supports that assertion. Further, he does not attack the trial court's determination that under the circumstances it was reasonable for the hospital to obtain and test a blood sample. The Court of Criminal Appeals "h[as] not afforded the courts of appeals latitude to reverse a trial court's decision on new theories of law not previously presented to that court for its consideration." *Id.* at 77.

Before the suppression hearing was held, the trial court, and the jury, had already heard considerable testimony of just how intoxicated Hailey appeared to be when his car left the roadway and became stuck in the mud. The driver of a car traveling in the opposite direction testified Hailey's car bounced twice off the guardrail on the right side of the roadway before careening across the oncoming lane of traffic, narrowly missing a head-on collision with the witness's car containing the witness, his wife and four children. Hailey's car continued across the oncoming lane of traffic and left the roadway on the wrong side, and went down an embankment about twenty feet to a creek where the car became stuck in the mud. He then attempted to re-start the car so he could leave. Hailey was unable to stand and smelled strongly of an alcoholic beverage.

Both officers who arrived at the scene also testified that Hailey smelled strongly of an alcoholic beverage and could not stand without assistance. Additionally, one of the officers testified that the defendant was so intoxicated that when Hailey initially stood and attempted to face the

officer upon the officer's arrival at the scene, Hailey fell over backwards into the mud. The officer also testified that Hailey failed one field sobriety test and was so intoxicated that the officer felt it was not safe for Hailey to even attempt two other standard field sobriety tests, the one-leg-stand test and the walk-and-turn test. The officer also testified that it was his decision to transport Hailey to the hospital "for observation because of his extreme intoxication" because he was concerned about alcohol poisoning. The other officer testified that in route to the hospital Hailey was slipping into and out of consciousness and had to continually be awakened for fear Hailey may have been getting alcohol poisoning.

The only witnesses called at the suppression hearing were the two officers. At the suppression hearing one officer testified that Hailey was administered a test with a portable breathalyser at the scene. The result was 337, indicating more than three times the legal limit. He further testified that he was concerned about alcohol poisoning and instructed another officer to take Hailey to the hospital for evaluation. The hospital blood test indicated a blood alcohol concentration of 454.24.[1] A level of 400 is usually fatal.

At the conclusion of the suppression hearing the Court made the following findings:

> The blood test was not taken as a result of the directive of any law enforcement officer. Based on the testimony of officers it appeared that this defendant was extremely intoxicated and periodically comatose.

> Also the court will find that there was a significant question with regard to the physical safety of the defendant. The portable breath test showed an extremely high level of the alcohol which is consistent with an extremely high level shown by the test conducted by the hospital.

> The Court finds that it was reasonable for the hospital to obtain a blood sample and for testing based on the existing circumstances.

The trial court then ruled that the documentary evidence regarding the blood test was admissible. The trial court's findings are amply supported by the record.

The majority has determined that Hailey was assaulted by the hospital when the hospital took a blood sample. This question has never been argued by anyone to either the trial court or this court. Further, no witness, including Hailey, testified whether or not Hailey refused to allow the hospital to draw and test a blood sample.

Upon independent evaluation of the entire record and applicable law, I would not decide this case on an issue never argued to any court. Additionally, upon a review of the evidence, I would hold that the trial court's factual determinations are fully supported by the evidence and the trial court did not abuse its discretion in admitting the hospital report into evidence. Finally, after an examination of the entire record, and in particular because the other evidence of guilt is so overwhelming, I have no difficulty in reaching a determina-

---

1. The majority concludes that the test results were not available to the emergency room physician until three days after the test was administered. The formal lab report indicates that it was *printed* ("run date") three days after the test was administered. An alternate reading of the report is that the test was conducted at "1524" on the date the blood was drawn, approximately an hour before Hailey was discharged with instructions regarding the need for observation for 24 hours. At the bottom of the printed lab report it indicates that the results had been "CALLED TO ER AND GAVE TO SLOAN." There would be no need to call "ER" with the test results three days after the event.

tion with "fair assurance that the error did not influence the jury, or had but a slight effect." Accordingly, I would hold that error, if any, was harmless.

Because the majority holds otherwise, I respectfully dissent.