**Michael John SPEBAR, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–03–00026–CR.**

Court of Appeals of Texas,
San Antonio.

Sept. 3, 2003.

David K. Chapman, Fort Worth, for appellant.

Ross Fischer, County Atty., Kendall County, Boerne, for appellee.

Sitting ALMA L. LÓPEZ, Chief Justice, SANDEE BRYAN MARION, Justice, and PHYLIS J. SPEEDLIN, Justice.

## OPINION

Opinion by SANDEE BRYAN MARION, Justice.

Defendant was charged with driving while intoxicated. After the trial court denied his motion to suppress the results of his blood test, defendant pled guilty pursuant to a plea bargain. On appeal, defendant asserts that the taking of his blood by hospital personnel was an assault; therefore, the results of the blood test were obtained illegally and should have been suppressed. We conclude the trial court did not abuse its discretion in denying defendant's motion to suppress; therefore, we affirm the trial court's order.

## BACKGROUND

At approximately 7:00 p.m. on January 11, 2002, Texas Department of Public Safety Trooper Derome West found defendant at the scene of an accident in which a car, driven by defendant, had rolled over and come to a stop on its roof. Defendant was trapped inside the car, upside down. At the suppression hearing, West testified there was a strong odor of alcohol on the defendant, the defendant's eyes were red and glassy, his speech was slurred, and he appeared intoxicated. However, West said defendant, although in pain, was awake, alert, and coherent while at the accident scene. Defendant suffered numerous injuries as a result of the accident, including a broken nose, skull fracture, cuts and bruises, nerve damage to his arm, fractured ribs, a broken breast bone, ruptured discs, a concussion, significant head trauma, and a broken ankle. West did not think defendant was dying. The "jaws of life" were used to extricate defendant from his car, and he was transported to a hospital by helicopter. Approximately one hour later, West met defendant at the hospital, where he read the statutory warning to defendant requesting he submit a specimen of his blood. West said he thought defendant understood the warning. Defendant refused West's request that he submit a sample of his blood.

Defendant admitted he consumed a six-pack of beer throughout the day of the accident, and he drank his last beer at approximately 3:00 p.m. He thought the accident occurred because he had a heart attack while driving, which he said subse-

quent medical testing confirmed. He stated he refused to give his consent to have his blood taken, and he did not sign the hospital's Consent for Treatment and Conditions for Admission. However, defendant's wife signed the hospital's consent form, although defendant said he did not give her permission to do so on his behalf. The hospital's Consent for Treatment and Conditions for Admission states, "I understand that this hospital has the duty to perform a medical screening examination and to provide appropriate treatment for an emergency medical condition regardless of whether I sign this document."

At some point that evening, medical personnel drew and tested defendant's blood. There is no contention here that the blood was drawn based upon a request by any law enforcement officer. West later obtained the results of the blood test, through a subpoena duces tecum, and the results indicated defendant had a blood alcohol content that exceeded the legal limit. Charges were then filed against defendant, and he voluntarily surrendered himself to custody. Following the denial of his motion to suppress, defendant pled guilty to driving while intoxicated.

## STANDARD OF REVIEW

 In reviewing a trial court's denial of a motion to suppress, we must be deferential to the trial court's determination of the historical facts supported by the record. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). We review a trial court's ruling on a motion to suppress for abuse of discretion. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex.Crim.App.1996). Under this standard, we view "the evidence in the light most favorable to the trial court's ruling," affording almost total deference to findings of historical fact supported by the record. *Guzman*, 955 S.W.2d at 89. However, when the resolu-

tion of factual issues does not turn upon an evaluation of credibility or demeanor, we review de novo the trial court's determination of the applicable law as well as its application of the law to the facts. *Id.*

## SUPPRESSION OF RESULTS OF BLOOD TEST

 Evidence obtained by an officer or any person in violation of the United States or Texas Constitutions or in violation of any state or federal law "shall [not] be admitted in evidence against the accused on the trial of any criminal case." TEX.CODE CRIM. P. 38.23(a) (Vernon Supp. 2003). Defendant asserts the results of his blood test were obtained illegally because the taking and testing of his blood, without his consent, amounted to an assault under Penal Code section 22.01(a)(3). Thus, he concludes the results of the blood test should have been suppressed pursuant to article 38.23.

The State relies on *State v. Hardy*, 963 S.W.2d 516 (Tex.Crim.App.1997), for its argument that society's interest in safeguarding the privacy of medical records is not strong enough to protect the results of blood tests taken by hospital personnel for medical purposes after a traffic accident. In *Hardy*, the appellant's blood was taken and analyzed, and a written report was made, by the hospital for medical purposes. The question before the Court of Criminal Appeals was "whether the government's acquisition of the written report infringed upon a societally-recognized expectation of privacy." *Id.* at 524. However, the opinion in *Hardy* does not indicate whether the appellant gave his consent to the taking of his blood, nor does it appear that the blood was taken illegally. Thus, the issue here is different from the issue in *Hardy*. Here, defendant does not assert his right to privacy was violated. Instead, he asserts the results of his blood test

were inadmissible because they were illegally obtained when the hospital personnel assaulted him by taking his blood.

Defendant relies on *Hailey v. State*, 50 S.W.3d 636, 640 (Tex.App.-Waco 2001), *rev'd on other grounds*, 87 S.W.3d 118 (Tex.Crim.App.2002), in which the Waco court held that taking appellant's blood specimen without his permission was an assault under both criminal and civil law. In that case, the appellant was not physically injured following a one-car accident; however, he failed a Horizontal Gaze Nystagmus test, smelled of alcohol, and was unable to balance himself. Appellant was not arrested at the scene; instead, he was transported by a Department of Public Safety officer to a nearby hospital for an evaluation of whether he had "alcohol poisoning." *Id.* at 638. While at the hospital, appellant was read the statutory warning required before a blood specimen can be obtained, but he refused to submit a specimen. At some point, appellant walked outside the hospital to smoke a cigarette. The officer who transported appellant to the hospital brought him back inside to a room and handcuffed him to a bed. Later, a hospital employee came into the room and took a sample of appellant's blood, without first obtaining his oral or written consent.

The court of appeals noted that appellant had enough control of his faculties to walk outside for a cigarette, and was coherent enough to refuse the officer's request for a blood specimen and to answer questions asked by hospital personnel, the answers to which were transcribed on documents admitted into evidence at trial. "Although those documents said Hailey had 'acute alcohol intoxication,' they also showed that when he arrived he was 'alert,' in no pain, and without physical injury. He was 'making complete sense when asked about medical history.' About two hours after he arrived, he was 'able to walk without assistance' with 'improving clearing consciousness.'" *Id.* at 639–40. The court held, with no further discussion, "[u]nder both the civil and criminal law of Texas, taking the blood specimen without [appellant's] permission was an assault, and therefore illegal." *Id.* at 640.

We find *Hailey* distinguishable on its facts from this case. Here, the trial court stated at the conclusion of the suppression hearing, "from what you have here, you don't have law enforcement taking a blood sample. It seems to have been done as a result of medical treatment-emergency medical treatment on the [defendant]." Although defendant established he refused to give West his consent for a blood sample, defendant presented no evidence surrounding the actual taking of his blood by hospital personnel, which apparently occurred sometime after West left the hospital. In fact, no evidence was presented explaining the events that followed West's leaving the hospital, other than that defendant's condition was stabilized. Although defendant said he did not give his wife permission to sign the hospital consent form on his behalf, no evidence was offered to explain why his wife signed the form. Other than the blood test results, no medical records describing defendant's medical condition were admitted into evidence. However, there was testimony about the defendant's significant physical injuries as a result of the accident. Based on this record, we do not believe the trial court abused its discretion in denying the motion to suppress on the grounds that defendant's blood sample was illegally obtained as a result of an assault by hospital personnel.

█ The defendant also asserts the hospital violated his constitutional right against unreasonable search and seizure because the hospital personnel were

agents of the State. In *Ferguson v. City of Charleston,* 532 U.S. 67, 86, 121 S.Ct. 1281, 149 L.Ed.2d 205 (2001), the Supreme Court held that "Because MUSC is a state hospital, the members of its staff are government actors, subject to the strictures of the Fourth Amendment. Moreover, the urine tests conducted by those staff members were indisputably searches within the meaning of the Fourth Amendment." The issue in *Ferguson* was "whether a state hospital's performance of a diagnostic test to obtain evidence of a patient's criminal conduct for law enforcement purposes is an unreasonable search if the patient has not consented to the procedure. More narrowly, the question is whether the interest in using the threat of criminal sanctions to deter pregnant women from using cocaine can justify a departure from the general rule that an official nonconsensual search is unconstitutional if not authorized by a valid warrant." *Id.* at 69, 121 S.Ct. 1281.

In *Ferguson,* staff members of a state medical training hospital, concerned about the increasing use of cocaine by women receiving prenatal care, developed a written policy for obtaining evidence to prosecute the women who bore children that tested positive for drugs at birth. Hospital representatives, police, and local officials devised the procedures to be followed. These procedures provided a plan to identify and test pregnant patients suspected of drug use without their knowledge or consent. The plan required that a chain of custody be followed when obtaining and testing patients' urine samples, contained police procedures and criteria for arresting patients who tested positive, and encouraged prosecution for drug offenses and child neglect. *Id.* at 70–73, 121 S.Ct. 1281.

The Supreme Court held that a state hospital's performance of diagnostic tests to obtain evidence of a patient's criminal conduct for law enforcement purposes was an unreasonable search if the patient had not consented to the procedure. *Id.* at 84–85, 121 S.Ct. 1281. The interest in using the threat of criminal sanctions to deter pregnant women from using cocaine could not justify a departure from the general rule that an official nonconsensual search is unconstitutional if not authorized by a valid warrant. *Id.*

The defendant does not contend the hospital took his blood at the behest of the State or pursuant to any State-sponsored program or policy. Nor does defendant contend the blood tests results were provided to the State pursuant to any State-sponsored program or policy. The State obtained the results when defendant's medical records were subpoenaed. The trial court determined the blood was drawn for medical purposes. Thus, nothing in the record establishes that the hospital personnel were acting as state agents for law enforcement purposes when the blood was drawn and analyzed. *See Hardy,* 963 S.W.2d at 523–24; *Hailey,* 50 S.W.3d at 640; *St. Clair v. State,* 26 S.W.3d 89, 102 (Tex.App.-Waco 2000, pet. ref'd). We conclude constitutional error is not implicated here.

## CONCLUSION

The trial court did not abuse its discretion in denying defendant's motion to suppress; therefore, we affirm the trial court's order.