COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 
2-03-037-CR
 
KRISTINA RAMOS                                                                 APPELLANT 
 
V.
 
THE STATE OF TEXAS                                                                  STATE 
 
------------
 
FROM 
COUNTY CRIMINAL COURT NO. 2 OF DENTON COUNTY 
 
------------
 
OPINION
 
------------
I. INTRODUCTION 
        Appellant Kristina Ramos pled guilty pursuant to a plea agreement to the 
Class B misdemeanor offense of driving while intoxicated (DWI). Prior to her 
plea, appellant filed a motion to suppress all blood evidence obtained following 
her accident and all results of any testing of such evidence. The trial court 
entered an order denying appellant’s motion to suppress, which contained 
findings of fact and conclusions of law. In eight issues, appellant claims the 
trial court erred in its ruling. We affirm. 
II. FACTUAL AND LEGAL BACKGROUND
        On March 31, 2002, appellant crashed her automobile into a tree while 
driving in Denton, Texas. Kyle Wellman, a firefighter and paramedic with the 
City of Denton Fire Department, responded to a report of appellant’s accident 
just before three o’clock that morning. Appellant was “profusely bleeding” 
from her forehead and her left collar bone was broken, but in Wellman’s 
opinion, her injuries were not life threatening. Appellant informed Wellman she 
had been drinking. Denton Police Officer Elizabeth Carpenter, who later arrived 
at the scene, noticed that appellant exhibited signs of intoxication including 
some slurred speech, red eyes, and alcohol on her breath. Since appellant had 
been injured in the accident, the officer believed that field sobriety tests would 
not be appropriate. 
        In accordance with appellant’s wishes, Wellman provided medical 
treatment at the scene and then transported appellant to Denton Community 
Hospital. At the hearing on the motion to suppress, appellant testified she did 
not know if the accident had knocked her unconscious, but she did not recall 
talking to Wellman or Officer Carpenter or being transported to the hospital. 
Wellman testified that appellant was “alert and oriented” at the scene, she 
never lost consciousness from the time he encountered her until the time she 
arrived at the hospital, and she was not in shock. Moreover, Officer Carpenter 
testified she never saw appellant lose consciousness and testified that she and 
appellant were able to converse in the ambulance. 
        At the hospital, Officer Carpenter found appellant in the “X-ray room.” 
She testified that appellant was upset, but alert and oriented and responded 
candidly to her questions about the accident. When the officer asked what 
caused the accident, appellant told Officer Carpenter she had drunk about six 
vodka tonics and that the accident happened because she got “too drunk.” 
When the officer asked, “Would you be willing to give me a voluntary blood 
draw,” appellant responded, “[Y]es.” The officer testified that when appellant 
gave consent, she was not under arrest and had not been threatened with jail, 
physical force, or with a search warrant. The officer also testified that she did 
not obtain written consent because appellant was strapped to a backboard and 
because the officer did not want to aggravate whatever injuries she had. 
Officer Carpenter characterized appellant’s consent as voluntary, intelligent, and 
knowing.
        At the direction of Officer Carpenter, a hospital employee took a 
specimen of appellant’s blood and turned it over to the officer. Testing by the 
Department of Public Safety later showed a blood alcohol content of 0.19. A 
short time later, a hospital employee conducted a second blood draw for 
medical purposes. Testing by the hospital later showed a presumptive alcohol 
concentration in appellant’s blood of 207 milligrams of alcohol per “0-10" 
deciliters of blood. The officer testified that appellant did not give consent for 
the hospital employee to give the officer the tube containing appellant’s blood 
specimen and that the officer did not consider obtaining a warrant in order to 
take possession of the tube. On the informed consent form contained in the 
medical records, the notation “[m]ultiple injuries unable to sign” appears in the 
space for patient’s signature, and the initials “H.E.” appear on the witness line. 
        Appellant testified that she was physically able to sign the consent forms. 
However, she also testified she was “in like a state of shock,” remembered she 
only “woke up” twice at the hospital, and did not remember talking to anyone. 
Despite having no recollection of talking to anyone, appellant also testified she 
never consented to a blood draw for the police or the hospital. On cross-examination, appellant admitted she might have had a conversation following 
the accident that she could not remember. 
        The next day, appellant was transferred to another hospital without being 
arrested. A few days after the accident, Officer Carpenter obtained a grand 
jury subpoena from Kevin Henry, a Denton County Assistant District Attorney, 
for the purpose of securing medical records from the accident because she 
suspected it might involve the offense of DWI. Pursuant to the subpoena, an 
“information vendor” employed by the hospital delivered appellant’s medical 
records to Officer Carpenter on April 18, 2002. 
        Officer Carpenter retained the medical records for “several months” in her 
office, after which the records were not delivered to the grand jury, but instead 
were “probably” delivered to a prosecutor that handles misdemeanor DWI 
cases, for the purpose of filing an Information against appellant on the charge. 
Based on an “Affidavit of Probable Cause” executed by Officer Carpenter on 
June 6, 2002, appellant was charged on September 17, 2002, by Information, 
with the Class B misdemeanor offense of DWI. 
III. STANDARD OF REVIEW
        In reviewing a trial court's denial of a motion to suppress evidence, we 
must be deferential to the trial court’s determination of the historical facts 
supported by the record. Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. 
App. 1997). We review a trial court’s ruling on a motion to suppress for abuse 
of discretion. Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 
1996). Under this standard, we view “the evidence in the light most favorable 
to the trial court’s ruling,” affording almost total deference to the trial court’s 
findings of historical fact supported by the record. Guzman, 955 S.W.2d at 89. 
Likewise, we are to utilize the same deference in reviewing the trial court’s
rulings on mixed questions of law and fact when the resolution of the questions
turns on an evaluation of credibility and demeanor. Id. However, we review
de novo mixed questions of law and fact that do not fall within the preceding
two categories. Id. 
IV. CONSENT TO PROVIDE BLOOD SAMPLE TO POLICE
        In issue five, appellant claims that the trial court’s ruling that she 
consented to provide a blood sample to Officer Carpenter and its “implicit 
finding regarding the scope of the consent given” violated the federal and state 
constitutions.
 

 In issue six, appellant contends that under the federal and state 
constitutions Officer Carpenter was not entitled to take possession of the blood
sample from the hospital nurse without a warrant.
 

  
A. Voluntariness of Appellant’s Consent 
The issue of whether appellant voluntarily consented to providing Officer 
Carpenter with a specimen of her blood is a mixed question of fact and law. 
See State v. Hunter, 102 S.W.3d 306, 309 (Tex. App.—Fort Worth 2003, no
pet.). The critical question is whether the resolution of this issue “turns” on an
evaluation of credibility and demeanor. Vargas v. State, 18 S.W.3d 247, 253
(Tex. App.—Waco 2000, pet. ref’d). “[A] question ‘turns’ on an evaluation of
credibility and demeanor when the testimony of one or more witnesses, if
believed, is always enough to add up to what is needed to decide the
substantive issue. . . .” Loserth v. State, 963 S.W.2d 770, 773 (Tex. Crim.
App. 1998). In other words, if we believed everything testified to by Officer
Carpenter, would her testimony always be enough to support a finding that
appellant voluntarily consented to provide a sample of blood? See id. We
believe it would. Therefore, we must give an almost total deference to the trial
court's ruling. Hunter, 102 S.W.3d at 309; Guzman, 955 S.W.2d at 89. 
Moreover, if the trial court’s decision is correct on any theory of law applicable
to the case, we will sustain the trial judge's decision. Hunter, 102 S.W.3d at
309.
        The taking of a blood specimen is considered a search and seizure within 
the meaning of the Fourth Amendment to the United States Constitution and 
Article 1, Section 9 of the Texas Constitution. Schmerber v. California, 384 
U.S. 757, 767, 86 S. Ct. 1826, 1834 (1966); Ferguson v. State, 573 S.W.2d 
516, 520 (Tex. Crim. App. 1978). When a search without a warrant is made, 
the State bears the burden to show that the search falls within one of the 
narrow exceptions to the warrant requirement in order for the search to be 
constitutionally permissible. Mendoza v. State, 30 S.W.3d 528, 531 (Tex. 
App.—San Antonio 2000, no pet.). Consent to the search is an exception to 
the requirement for a warrant and requires that the State prove by clear and
convincing evidence, based on a totality of the circumstances, that the
defendant gave consent freely and voluntarily.
 

 Hunter, 102 S.W.3d at 310 
(citing Reasor v. State, 12 S.W.3d 813, 818 (Tex. Crim. App. 2000)). If
consent is obtained through duress or coercion, whether actual or implied, that
consent is not voluntary. Id. (citing Allridge v. State, 850 S.W.2d 471, 493
(Tex. Crim. App. 1991), cert. denied, 510 U.S. 831 (1993)). Moreover,
“voluntariness” of consent cannot be shown where “a person is unconscious
or incapacitated.” Reasor, 12 S.W.3d at 817.
        After considering the evidence, which we described above, the trial court 
made the following findings of fact regarding appellant’s consent in its order
denying the motion:
On March 31, 2002, Officer Carpenter went to the
hospital and requested blood from [appellant].
[Appellant] was not under detention, arrest, or
custody. [Appellant] gave oral consent to giving the
blood to Officer Carpenter. [Appellant] was conscious
and alert at the time she gave oral consent. . . . 
Officer Carpenter took possession of the requested
blood sample and submitted it for testing to the Texas
Department of Public Safety. 

The trial court also made the following conclusions of law regarding appellant’s
consent: “[Appellant] voluntarily, freely, and knowingly consented to providing
a blood sample to Officer Carpenter. The consent given by [appellant] was not
a result of duress or coercion.“ 
        Appellant claims the evidence of consent in the present case constituted 
a showing “even more anemic” than that found insufficient in State v.
Comeaux, 786 S.W.2d 480, 484-85 (Tex. App—Austin 1990), aff’d, 818
S.W.2d 46, 53 (Tex. Crim. App. 1991) (plurality opinion). Specifically,
appellant argues that Officer Carpenter failed to inform her of the purpose of
the blood specimen; failed to inform her of the consequences of her refusal, in
accordance with Section 724.015 of the Texas Transportation Code; and failed
to obtain her written consent. 
        However, the facts of Comeaux are different than those in the present 
case. In Comeaux, the officer did not directly ask for the defendant’s consent, 
and the defendant never gave direct consent to provide a blood specimen to 
police. Id. at 484. The only blood drawn in Comeaux was drawn by a private 
hospital and then later obtained and tested by police under false pretenses. Id. 
at 482-84. Here, the evidence shows appellant voluntarily consented to 
providing the police a sample of her blood, and Officer Carpenter made no 
misrepresentation in obtaining the sample. Moreover, the statutory warnings 
in Chapter 724 of the Texas Transportation Code apply “only to persons under
arrest when the blood sample is taken.” State v. Laird, 38 S.W.3d 707, 713
(Tex. App.—Austin 2000, pet. ref’d). Here, appellant was not under arrest
when she consented to provide the sample. 
        Therefore, under the relevant factors considered in past cases to 
determine the voluntariness of consent to draw blood, we conclude there was
substantial evidence to support the trial court’s finding that appellant voluntarily
consented to the drawing of a sample of blood, despite appellant’s inconsistent
testimony to the contrary. See Combest v. State, 981 S.W.2d 958, 961-62
(Tex. App.—Austin 1998, pet. ref’d). Appellant was not under arrest or in
custody when she consented to give a blood specimen to the police. She was
not in a coercive environment, but at a hospital. No physical force or violence
was used to obtain appellant’s consent. She was cooperative with the police. 
The officer did not claim to have, or threaten to obtain, a search warrant. Only
one officer was at the hospital. Appellant makes no claims that she was
unaware of her constitutional rights or that she was immature, uneducated, or
unsophisticated. While the consent given was not written, oral consent is
sufficient. See, e.g., Jackson v. State, 968 S.W.2d 495, 499 (Tex.
App.—Texarkana 1998, pet. ref’d). Furthermore, the testimony of Wellman
and Officer Carpenter shows that appellant was alert and oriented at the scene
and upon her arrival at the hospital.
        The trial court’s rulings on this issue show that it believed the police 
officer’s testimony and disbelieved appellant’s. Deferring, as we must, to the 
trial court's credibility determinations and to the historical facts impliedly found 
by the trial court when it denied appellant’s motion to suppress, we hold that 
the trial court did not abuse its discretion by concluding appellant’s consent 
was voluntary and by denying her motion to suppress. 
 
 
B. Scope of Appellant’s Consent 
        In issue five, appellant also argues that the trial court erred in its “implicit 
finding regarding the scope of consent,” claiming that the scope of consent was 
exceeded since a hospital nurse actually drew appellant’s blood and then 
handed the sample to the officer without appellant’s consent to turn over the 
sample to the police. Similarly, in issues six and eight, 
 

 appellant alleges the 
trial court erred by finding that no constitutional or statutory violation occurred
when the hospital released or Officer Carpenter seized the sample.
 

 Both 
parties agree that the resolution of this issue does not turn on an evaluation of
credibility and demeanor of witnesses, and it should therefore be reviewed de
novo. See Guzman, 955 S.W.2d at 89.
        The standard for measuring scope of consent under the Fourth 
Amendment is that of “objective” reasonableness. Florida v. Jimeno, 500 U.S.
248, 251, 111 S. Ct. 1801, 1803 (1991). In other words, “what would the
typical reasonable person would have understood by the exchange between
officer and the suspect?” Id. at 251. Finally, suspects are free to limit the
scope of the consent they give. Id. at 252. 
        The State submits, and we agree, that when a patient who has been 
involved in a traffic accident is asked by a police officer in a hospital to provide 
a blood sample, consent for the sample reasonably contemplates using the 
blood to investigate the cause of the accident or offense related to the 
accident. Moreover, before appellant gave consent in this case, the officer 
asked appellant what caused the accident, and appellant answered that she had 
been drinking vodka tonics and that the accident happened because she was 
“too drunk.” Finally, there is no evidence that appellant limited the scope of her 
consent. 
        Using the reasonable person standard, we hold that the officer could 
obtain and analyze the first blood specimen without exceeding the scope of 
appellant’s consent. Moreover, since appellant had previously consented to 
providing the specimen to police, additional consent by appellant to have the 
nurse hand the specimen to the officer was not required. Therefore, having 
found the trial court did not err in holding that appellant voluntarily consented 
to giving a blood sample to Officer Carpenter and that neither Officer Carpenter 
nor the hospital exceeded the scope of appellant’s consent, we overrule 
appellant’s fifth and sixth issues. 
 
 
V. CONSENT TO MEDICAL TREATMENT 
        In issue seven, appellant contends the trial court erred in ruling that the 
drawing of a sample of appellant’s blood by hospital personnel, 
 

 without 
appellant’s consent to accept medical treatment, did not constitute an assault
upon appellant, which would require suppression of the blood draw under
Article 38.23(a) of the Texas Code of Criminal Procedure.
 

 In challenging this 
finding, appellant relies on Hailey v. State, 50 S.W.3d 636, 640 (Tex.
App.—Waco 2001), rev’d on other grounds, 87 S.W.3d 118 (Tex. Crim. App.
2002), cert. denied, 123 S. Ct. 2218 (2003). In Hailey, the Waco court held
that the results of a blood test taken by a hospital without the defendant’s
permission should have been suppressed under Article 38.23 because taking
the specimen was an assault under both criminal and civil law. Id. at 640. 
        There, the defendant was not physically injured following a one-car 
accident, but after the defendant failed a horizontal gaze nystagmus test, 
exhibited signs of intoxication, and took a portable breath test, 
 

 a Department 
of Public Safety officer decided the defendant was highly intoxicated. Id. at
637-38. According to standard procedure, the officer would have arrested the
defendant and taken him to jail; however, he ordered his fellow officer to
transport the defendant to a nearby hospital for an evaluation of whether he
had alcohol poisoning. Id. at 638. At the hospital, the defendant refused to
consent to a blood draw at the officer’s request. Id. Sometime later, when the
defendant walked outside and smoked a cigarette, the officer, who had
transported him to the hospital, retrieved him and handcuffed him to a bed in
a hospital room. Id. Later, an unidentified hospital employee came into the
room and took a sample of appellant’s blood without obtaining his oral or
written consent. Id. The officers testified that they did not order the sample
taken, and no evidence was offered to contradict their testimony. Id. The
hospital tested the sample three days later, and the results showed the
defendant was highly intoxicated. Id. The State subpoenaed the results, which
it used at the grand jury and introduced at trial. Id. 
        In Hailey, the court noted that, “there [was] no evidence in the record 
that [the defendant] ever requested or consented to any tests or withdrawals 
of fluid specimens or to the evaluation and treatment of any condition.” Id. at 
638. In a footnote, the court concluded, “It is axiomatic that if there was 
consent to or a request for treatment, any complaint by [the defendant] that 
blood was taken illegally would be negated.” Id. at 639 n.6. 
        The San Antonio Court of Appeals recently addressed the same issue in 
Spebar v. State, No. 04-03-00026-CR, slip op. at 4, 2003 WL 22047623, at 
*2 (Tex. App.—San Antonio, Sept. 3, 2003, no pet.). In that case, a Texas 
Department of Public Safety trooper found the defendant trapped inside his 
overturned vehicle. Id. slip op. at 2, 2003 WL 22047623 at *1. The trooper 
testified that there was a strong odor of alcohol on the defendant, the 
defendant’s eyes were red and glassy, his speech was slurred, and he appeared 
to be intoxicated. Id. Although the defendant was severely injured, the trooper 
did not think he was dying. Id. Once removed from the vehicle, the defendant 
was taken by helicopter to a nearby hospital. Id. 
        An hour later, the trooper met the defendant at the hospital and 
attempted to obtain his consent to submit to a blood draw. Id. slip op. at 3, 
2003 WL 22047623 at *1. The defendant refused, but admitted he consumed 
a six-pack of beer throughout the day of the accident. Id. The defendant also 
stated he thought his accident occurred because he had a heart attack. Id. The 
defendant did not sign the hospital's Consent for Treatment and Conditions for 
Admission. Id. However, the defendant's wife signed the hospital's consent 
form, although defendant testified he did not give her permission to do so on 
his behalf. Id. At some point, medical personnel drew and tested the 
defendant's blood for medical purposes. Id. The trooper later obtained the 
results of the blood test, through a subpoena duces tecum, and the results 
indicated that the defendant had a blood alcohol content that exceeded the 
legal limit. Id. Charges were later filed against the defendant, and following 
the denial of his motion to suppress, the defendant pled guilty to driving while 
intoxicated. Id. 
        The court held that the facts of Spebar were distinguishable from those 
in Hailey and that the trial court’s conclusion that the blood sample was taken
as a result of emergency medical treatment and not an illegal assault on the
defendant was not an abuse of discretion. Id. slip op. at 5-6, 2003 WL
22047623 at *3. In discussing the facts in the record, the court pointed out
that:
[a]lthough [the] defendant established he refused to 
give [the trooper] his consent for a blood sample, [he] 
presented no evidence surrounding the actual taking of 
his blood by hospital personnel, which apparently 
occurred sometime after [the trooper] left the hospital. 
In fact, no evidence was presented explaining the 
events that followed [the trooper’s] leaving the 
hospital, other than that [the] defendant's condition 
was stabilized. Although [the] defendant said he did 
not give his wife permission to sign the hospital 
consent form on his behalf, no evidence was offered to 
explain why his wife signed the form. 
Id. slip op. at 6, 2003 WL 22047623 at *3. 

        We also find Hailey distinguishable from this case on its facts and follow 
the reasoning set out in Spebar. Here, the trial court held in its findings of fact 
 
that:
 
[Appellant] was conscious, alert and able to 
communicate to the hospital personnel treating her for 
her injuries. No written consent for treatment was 
obtained prior to the hospital rendering care to 
[appellant] but consent can be inferred from the 
medical records and evidence presented. The evidence 
does not show that the hospital staff committed an 
assault on [appellant]. 

Although there is direct evidence establishing that appellant consented to
providing a blood sample to the officer, there is also sufficient evidence
supporting the trial court’s finding that appellant’s consent to medical treatment
at the hospital can be inferred. As noted above, the testimony of Wellman and
Officer Carpenter indicated that appellant was alert and oriented at the hospital. 
Wellman testified that at the scene, appellant expressed a desire for medical
treatment and a desire to go to the hospital; however, appellant did not recall
talking to Wellman and testified that he should have left her trapped in her car
at the scene. On cross-examination, appellant admitted she “perhaps” wanted
the hospital to tend to her injuries and testified that she never refused medical
treatment. On the informed consent form contained in the medical records, the
notation “multiple injuries unable to sign” appears in the space for the patient’s
signature and the initials “H.E.” appear on the witness line. Like Spebar, no
evidence was presented explaining the events surrounding the second blood
sample draw from appellant, and no evidence was offered to identify “H.E.” 
        Based on this record, we do not believe the trial court abused its 
discretion in denying appellant’s motion to suppress on the grounds that 
appellant’s blood sample was illegally obtained as a result of an assault by 
hospital personnel. We overrule appellant’s seventh issue.   
VI. EXPECTATION OF PRIVACY IN MEDICAL RECORDS 

        In issues one and four, appellant claims that the trial court erred in ruling 
that appellant did not possess an expectation of privacy in her medical records 
under the federal and state constitutions and state statutory law. 
 

 Similarly, in 
issue eight, appellant complains the trial court erred in ruling that the hospital’s
disclosure of appellant’s medical records to a police officer, without appellant’s
written consent, did not violate Chapter 159 of the Texas Occupation Code. 
 
 
A. Constitutional Expectation of Privacy 
        Appellant asserts that she had a constitutional expectation of privacy in 
medical records containing results of blood-alcohol tests created by a private 
hospital in the course of emergency medical treatment and later submitted to 
the police in response to a subpoena. While appellant appears to concede that 
State v. Hardy, 963 S.W.2d 516, 523-27 (Tex. Crim. App. 1997), decided this 
issue against her position, she argues that the Hardy decision has been 
overruled by the United States Supreme Court in Ferguson v. City of 
Charleston, 532 U.S. 67, 121 S. Ct. 1281 (2001). 
        In accordance with Hardy, the trial court, in its conclusions of law, stated 
that appellant “had no reasonable expectation of privacy . . . in the medical 
records documenting her medical condition and alcohol level from the motor 
vehicle accident.” In Hardy, the Texas Court of Criminal Appeals held: 
We express no opinion concerning whether society
recognizes a reasonable expectation of privacy in
medical records in general, or whether there are
particular situations in which such an expectation
might exist. We note only that, given the authorities
discussed, whatever interests society may have in
safeguarding the privacy of medical records, they are
not sufficiently strong to require protection of blood-alcohol test results from tests taken by hospital
personnel solely for medical purposes after a traffic
accident. 
 
963 S.W.2d at 527.  
        At issue in Ferguson was a policy implemented by a state hospital, police, 
and local officials to obtain evidence that could be used to prosecute women 
who bore children that tested positive for drugs at birth. Ferguson, 532 U.S. 
at 69-73, 121 S. Ct. at 1282-85. Under the policy, the state hospital, in 
connection with the police, tested urine samples of the patients suspected of 
using drugs without their consent or knowledge. Id. at 70-73, 1284-86. 
However, both Hardy and the instant case do not involve a policy similar to the 
one addressed in Ferguson. 
        Here, appellant does not contend that the hospital took the second 
sample of her blood at the behest of the State or pursuant to any State-sponsored program or policy. Nor does appellant contend the blood test results 
were provided to the State pursuant to any State-sponsored program or policy. 
The State obtained the results when it subpoenaed appellant's medical records. 
The trial court determined in its findings of fact that the blood was drawn
during the course of medical treatment according to the orders of a physician
for medical testing and that the hospital personnel tending to the defendant
were not acting as agents of law enforcement. 
        Under these differing facts, the holding in Ferguson cannot properly guide 
the resolution of appellant’s constitutional challenges. See Spebar, slip op. at 
7-8, 2003 WL 22047623, at *4 (citing Hardy to show that because the record 
established that the hospital personnel were not acting as state agents when 
blood was drawn and analyzed, the constitutional error implicated in Ferguson 
was not present); Garcia v. State, 95 S.W.3d 522, 526-27 n.1 (Tex. 
App.—Houston [1st Dist.] 2002, no pet.) (following the holding of Hardy after 
the Ferguson decision and applying Hardy to the appellant’s challenge under the 
the Texas Constitution); see also Alvarez v. State, No. 03-01-00532-CR, 2002 
WL 463278, at *2-*3 (Tex. App.—Austin, March 28, 2002, no pet.) (not 
designated for publication) (noting, without reaching the merits of the 
appellant’s claim, the inapplicability of Ferguson to a case with facts similar to 
those in the present case). Moreover, absent any guidance or instructions from 
the court of criminal appeals, we are compelled to follow existing case law. 
Tapp v. State, 108 S.W.3d 459, 463 (Tex. App.—Houston [14th Dist.] 2003, 
no pet. h.). We therefore overrule appellant’s first issue. 
B. Statutory Expectation of Privacy
        Again, contrary to Hardy, appellant asserts she had a statutorily-based 
expectation of privacy in her medical records that should have prevented the 
records from being seized by the State or relinquished by hospital personnel. 
Appellant concedes that the Hardy decision expressly held that a patient has no 
statutory privacy interest in medical records created during treatment following 
an automobile accident since evidence Rule 509 resulted in the repeal of former 
Section 5.08 of the Texas Revised Civil Statutes, now chapter 159.003 of the 
occupation code, to criminal matters. Hardy, 963 S.W.2d at 519-23. However, 
appellant argues that after the adoption of Rule 509, but before the decision in
Hardy, the legislature manifested an intent to legislate the manner in which
medical records are disclosed by hospitals. In other words, appellant claims the
amendment to the Medical Practices Act indicated the legislature’s intent to
“unrepeal” section 5.08, now 159.003 of the occupation code, as it relates to
criminal proceedings. 
        Appellant focuses on an amendment to the Medical Practices Act enacted 
in 1995 when the legislature added language concerning a court order or 
subpoena: “(a) An exception to the privilege of confidentiality in a court or 
administrative proceedings exists . . . (12) to a court or a party to an action 
under a court order or court subpoena.” TEX. OCC. CODE ANN. § 
159.003(a)(12). Appellant claims that in Hardy, which was handed down in 
1997, the court of criminal appeals limited its consideration of the Medical 
Practices Act to the terms of the statute as it existed on December 7, 1992, 
the date the medical records in that case were seized. Act of May 26, 1983, 
68th Leg., R.S. ch. 511, § 1, sec. 5.08(g)(6), 1983 Tex. Gen. Laws 2970, 
2971 (current version at TEX. OCC. CODE ANN. § 159.003(a)(12)). Appellant 
relies on Judge Baird’s dissent to the denial of rehearing in Hardy to make the
argument that the Hardy court did not consider the effect of the 1995
amendment to section 5.08, which includes the repealed language. Hardy, 963
S.W.2d at 531-32. Appellant argues this shows a legislative intent to override
the repeal of the statute as to criminal proceedings and reinstate the more
restrictive requirements of the statute. Judge Baird’s dissent to the denial of
rehearing indicates that the court did not consider the 1995 amendments
(although he declines to say whether the other members of the court were
aware of it) and its effects on the repeal of 5.08. Id. 
        However, even if the Hardy court did not consider the 1995 amendments, 
appellant does not explain how regulating the “manner of disclosure” overrules 
Hardy and restores a reasonable expectation of privacy in medical records 
created by a private hospital for medical purposes following a traffic accident. 
Instead, it is clear from a reading of the plain language of the current version 
of 159.003(a)(12) that this Section is permissive rather than restrictive. TEX. 
OCC. CODE ANN. § 159.003(a)(12). In other words, the statute does not 
dictate only one “manner of disclosure” as appellant argues, but if the
information is obtained pursuant to court order or subpoena, it is excepted from
confidentiality or privilege; however, information subject to the other exceptions
in the statute does not necessarily have to be obtained by court order or
subpoena. Therefore, relying on Hardy, we must overrule appellant’s first,
fourth, and eighth issues.
VII. SUBPOENA DEFECTS
        In issue two, appellant contends the trial court ruled in error that medical 
records obtained by an ordinary subpoena following a prior allegedly illegal 
seizure based on a grand jury subpoena were admissible under the “independent 
source doctrine.” Appellant argues that this doctrine is not an exception under 
Article 38.23 of the Texas Code of Criminal Procedure. 
 

 In issue three, 
appellant contends the trial court erred when it failed to rule that the allegedly
illegal grand jury subpoena violated her rights under the federal and state
constitutions.
 

 The law is clear that because appellant has no constitutional or 
statutory reasonable expectation of privacy with respect to blood-alcohol test
results obtained for medical purposes following an accident, she has no
standing to complain of any alleged defects in the subpoena process. Tapp,
108 S.W.3d at 461; Garcia, 95 S.W.3d at 526-27; Hardy, 963 S.W.2d at 527;
Dickerson v. State, 965 S.W.2d 30, 31 (Tex. App.—Houston [1st Dist.] 1998),
pet. dism’d, improvidently granted, 986 S.W.2d 618 (Tex. Crim. App. 1999). 
We therefore overrule appellant’s second and third issues. 
VIII. CONCLUSION
        Having overruled all of appellant’s issues on appeal, we affirm the trial 
court’s judgment.   
 
 
                                                          SAM J. DAY 
                                                          JUSTICE
 
PANEL A:   CAYCE, C.J.; GARDNER, J.; and SAM J. DAY, J. (Retired, Sitting 
by Assignment). 
 
PUBLISH
 
DELIVERED: December 18, 2003